# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          **Plaintiff-Respondent,**<br><br>      **v.**<br><br>RICHARD UPSHAW,<br><br>          **Defendant-Petitioner.** | **1:14-cr-00256-LJO-SKO**<br><br>**ORDER DENYING 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**<br><br>**(ECF No. 103)** |

       Richard Upshaw ("Petitioner" or "Upshaw") brings a *pro se* 28 U.S.C. § 2255 motion ("§ 2255 motion") to vacate, set aside, or correct his sentence. ECF No. 103. Upshaw pleaded guilty to two counts in the indictment for (1) possession of images for counterfeiting U.S. obligations under 18 U.S.C. § 474 (count four), and (2) for possession of 15 or more unauthorized and counterfeit access devices under 18 U.S.C § 1029(a)(3) (count five). ECF Nos. 1, 72. Petitioner now challenges his conviction on the ground that his counsel was ineffective by allegedly (1) not filing a motion to suppress or requesting a *Franks* hearing; (2) failing to provide Upshaw with certain evidence relating to the motion to suppress prior to Upshaw entering into a plea agreement with the government; and (3) failing to advise him about the potential sentencing consequences of his guilty plea. For the reasons discussed below, the Court DENIES the petition.

# I. **BACKGROUND**

On December 4, 2014, Petitioner was indicted on five counts for violation of: (1) passing counterfeit U.S. obligations (18 U.S.C. § 472 – Counts 1 and 2); (2) counterfeiting U.S. obligations (18 U.S.C. § 471 – Count 3); (3) possession of images for counterfeiting U.S. obligations (18 U.S.C. § 474 – Count 4); and (5) possession of 15 or more unauthorized and counterfeit access devices (18 U.S.C. § 1029(a)(3) – Count 5). ECF No. 1. At his arraignment on December 19, 2014, Petitioner entered a not guilty plea. ECF No. 7. On January 19, 2016, the Court held a change of plea hearing, at which Petitioner pleaded guilty to counts four and five of the indictment. ECF No. 72.  A plea agreement was on file at the time of sentencing. ECF No. 71. The plea agreement provided a waiver of Upshaw's appellate rights and his right to collateral attack: "Defendant knowingly and voluntarily waives his Constitutional and statutory rights to appeal his plea, conviction, restitution imposed, forfeiture order and sentence." ECF No. 71 at ¶ 3(d). Defendant specifically agreed not to contest his plea, conviction, or sentence "in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255, except for non-waivable claims." *Id.* The plea agreement also specifically indicates that the twenty-five years is the maximum potential sentence for count four and ten years is the maximum for count five. *Id.* at ¶ 6.

During the January 19, 2016, plea colloquy, the Court asked Upshaw to identify the signature on the plea agreement as his and he did so. ECF No. 109 at 2-3. Upshaw affirmed that he had a chance to review the entire plea agreement with his lawyer and had no further questions concerning the agreement. *Id.* The Court specifically asked Upshaw if he understood that the maximum possible sentence was twenty-five years for count four and ten years for count five and he confirmed he did. *Id.* Upshaw also affirmed that he understood that he was waiving his right to appeal. *Id.* at 3-4. The Court asked whether anyone promising was Upshaw anything other than what is in the plea agreement and Upshaw responded in the negative. *Id.* at 5. The Court further warned that it was not obligated to follow the terms of the plea agreement; while it was obligated to consider the federal sentencing guidelines, it was not obligated to follow them;

and that if the Court did not follow the plea agreement or sentencing guidelines, Upshaw would not be able to take his change of plea back. *Id.* at 5. Upshaw confirmed he understood. *Id.*

A Presentence Investigation Report ("PSR") was submitted on April 11, 2016 and provided a sentencing guideline imprisonment range of 63 to 78 months for each count based on an offense level of 19 and a criminal history category of VI. ECF No. 76 at 4. The PSR recommended 78 months of imprisonment to be served concurrently for counts four and five. *Id.*

On May 2, 2016, Upshaw was scheduled to be sentenced but instead, at the insistence of Defendant and Defendant's counsel, Marc Days, the Court agreed to give Upshaw the opportunity to enter a two-year drug treatment program and continue sentencing accordingly. *See* ECF No 110. The Court was not inclined to do so initially and stated "He has got to have a program eventually, but he needs to have the program after he goes to prison. It is time. This criminal background is outrageous. And for the community to continue to be victimized by him is just not going to happen." *Id.* at 2-3. Mr. Days indicated that he had discussed the possibility of a drug treatment program with his client and that if he did not complete it, the Court would give him a much harsher sentence. *Id.* at 6-7. The Court explicitly warned Defendant that if he failed the drug treatment program for any reason he would get ten years (120 months) versus receiving the PSR's recommendation if he was sentenced as scheduled on that day. *Id.* at 11-13. The Court provided Upshaw the opportunity to confer with his attorney on whether this was a prudent choice. *Id.* Upshaw requested the opportunity to enter the drug program, despite the risk of a higher sentence if he failed. *Id.* at 13-15. At the hearing, Upshaw stated:

> I want the change and I'm willing to do whatever it takes to make that change. And if it takes me going to Delancey Street to do that change, then I'm more than willing to do that. I'm not going to fail. No matter what program I go to, I'm not going to fail….me and Mr. Days have spoke about this in depth. And I even said, as I even mentioned to Mr. Days that if I got either the Teen Challenge or the Jericho,…that if I did blow it, that I would take the full maximum. Not the ten years, I would do the 25 [years]."

*Id.* at 14-15.[1] Upshaw was admitted to the Delancey Street drug treatment program in May 2016. ECF No. 110 at 16-17; ECF No. 111. Unfortunately, Upshaw violated the rules of the program by possessing a cell phone for three days in September 2016 and shortly thereafter he left the program and turned himself in. *See* ECF No. 112. Following his failure to complete Delancey Street, on October 3, 2016, Upshaw was sentenced to a 120-month term of imprisonment, consistent with what the Court had indicated it would do if he failed the drug program. ECF Nos. 94-95.

Petitioner Upshaw filed his *pro se* § 2255 motion on October 6, 2017 claiming ineffective assistance of counsel on several grounds. ECF No. 103. Petitioner separately made a motion for appointment of counsel, which this Court denied on October 17, 2017. ECF Nos. 102, 104. The Court also requested an opposition from the government at that time. ECF No. 104. The government filed an opposition on March 2, 2018 which included a declaration from Upshaw's former counsel, Mr. Days, and Petitioner replied on March 30, 2018. ECF Nos. 113, 117. Additionally, after the filing of his § 2255 motion, Petitioner filed a motion requesting a copy of the indictment on June 14, 2018. ECF No. 118. On July 30, 2018, Petitioner also filed a motion to dismiss his indictment. ECF No. 119. On January 2, 2019, Petitioner filed a motion for release pending appeal followed by a motion for a status update on February 25, 2019. ECF Nos. 120-121. The Court addresses the outstanding motions herein.

## II. STANDARD OF REVIEW

### A. Section 2255

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Section 2255 provides four grounds upon which a sentencing court may grant relief to a petitioning in-custody defendant:

---

[1] Teen Challenge, Jericho, and Delancey Street all refer to various drug treatment programs. Upshaw had originally requested Teen Challenge but the Court stated it was not willing to refer him to that program but would be willing to refer Upshaw to Delancey Street. ECF No. 110 at 11-12. Upshaw, after conferring with his attorney, found the alternative acceptable at the May 2, 2016 hearing. *Id.* at 13-15.

> [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). Generally, only a narrow range of claims fall within the scope of § 2255. *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981). The alleged error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir.1994) (quoting 28 U.S.C. § 2255) (emphasis in original). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir.1996) (internal quotations omitted), *cert. denied*, 520 U.S. 1269 (1997). While a hearing may be required "[w]here section 2255 motions have been based on alleged occurrences outside the record," no hearing is required if "the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989). Ultimately, "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts." *Id.* at 1159.

**B.    Ineffective Assistance of Counsel**

The Sixth Amendment guarantees "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). Ineffective assistance of counsel claims are analyzed under the framework set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Ross v. Stewart*, 32 F. App'x 227, 228-29 (9th Cir. 2002). In *Strickland*, the Supreme Court held that there are two components to an ineffective assistance of counsel claim:

"deficient performance" and "prejudice." 466 U.S. at 694. "Deficient performance" means representation that "fell below an objective standard of reasonableness." *Stanley v. Cullen,* 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland,* 466 U.S. at 688). To demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

The Supreme Court has held that "the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). In the context of guilty pleas, the first prong of the *Strickland* test echoes the standard of attorney competence set forth *McMann. Id.* at 58-59. "Where . . . a Petitioner is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *United States v. Lopez*, 182 F.3d 929 (9th Cir. 1999) (quoting *McMann*, 397 U.S. at 771). "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 59. "In other words, in order to satisfy the 'prejudice' requirement, the Petitioner must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the movant as a result of the alleged deficiencies. *Strickland,* 466 U.S. at 697. The Court is also not required to address both prongs if the defendant makes an insufficient showing on one. *Id.*

## III. <u>DISCUSSION</u>

### A.      <u>§ 2255 Motion: Ineffective Assistance of Counsel</u>

Petitioner presents eight grounds, all based on a theory of ineffective assistance of counsel, as the basis for his § 2255 motion. ECF No. 103.  However, the eight grounds are largely overlapping and fall into three categories: (1) failure to file a motion to suppress or

request a *Franks*[2] hearing (grounds one and eight); (2) failure to disclose interview and police reports that related to the merits of Upshaw's Fourth Amendment claims until after Upshaw entered his guilty plea (grounds two and six); and (3) failure to correctly advise Petitioner of the sentencing consequences of his guilty plea (grounds three, four, five, and seven). In opposition, the government first contends that Upshaw waived and procedurally defaulted on the claims he raises in his § 2255 motion. ECF No. 113 at 17-20. Nonetheless, the government further contends regardless there is no factual or legal basis for the motion because Upshaw's claims are refuted by the record and by Upshaw's communication with his former counsel. *Id.* at 5. In contesting the merits of Upshaw's claim, the government submits Mr. Days' declaration as well as the transcripts from the in-court proceedings. The Court first addresses the procedural default and waiver arguments before addressing Upshaw's claims.

### 1.    **Procedural Default**

The government's argument that Petitioner procedurally defaulted his ineffective assistance of counsel claims by not raising them on direct appeal is without merit. *See Massaro v. United States,* 538 U.S. 500, 504 (2003) (noting that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.") The Supreme Court has held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id.*; *see also United States v. Santana*, No. SA CR 04-251, 2010 WL 2598232, at *3 (C.D. Cal. June 25, 2010) (finding claims of ineffective assistance of counsel for incorrectly predicting sentencing outcome and for failure to file motion to suppress were not subject to procedural default under *Massaro*).

### 2.    **Waiver Of His Right To Collateral Attack**

The right to collaterally attack one's conviction and sentence is granted by statute. A knowing and voluntary waiver of such statutory right is enforceable. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). "A defendant's waiver of his appellate rights is enforceable

---

[2] *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978).

if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir. 2011) (citation omitted). Generally, when a defendant knowing and voluntarily waives his rights to a federal habeas petition it strips the district court of jurisdiction. *Washington v. Lampert*, 422 F.3d 864, 870 (9th Cir. 2005). A reviewing court "looks to the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily." *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996). Here, Petitioner's plea agreement plainly states that he knowingly and voluntarily agreed to waive his rights to appeal his plea, conviction and sentence, including in any post-conviction proceeding under 28 U.S.C. § 2255. ECF No. 71 at ¶ 3(d). The plea agreement also informed the Defendant that the judge was not bound be the sentencing recommendations and could impose a maximum sentence of twenty-five years for count four and a maximum of ten years for count five. ECF No. 71 at ¶¶ 6, 10. Furthermore, during the plea colloquy the Court asked Upshaw if he had reviewed the entire plea agreement with his counsel and if he understood that he was waiving his right to appeal. Upshaw responded affirmatively to both questions. ECF No. 109 at 2-5. The Court also inquired whether Upshaw had any questions. *Id.* The procedures were sufficient to demonstrate a knowing and voluntary waiver. *See*, *e.g.*, *Baramdyka*, 95 F.3d at 844.

Waivers of the right to appeal cannot bar ineffective assistance of counsel claims associated with the negotiation of plea agreements. *Washington v. Lampert*, 422 F.3d at 871. In his reply, Petitioner claims that he entered the plea agreement involuntarily and unknowingly because of his counsel's advice to not file a motion to suppress if he wanted to get a drug treatment program. ECF No. 117 at 4. Specifically, he claims that he "entered a guilty plea under coercion from counsel and threats that the government would be vindictive if Defendant chose to pursue his Fourth Amendment claim." *Id.* at 4. This contention is directly contradicted by Upshaw's in-court statements during the plea colloquy that he was not threatened or promised anything other than what was set forth in the agreement. ECF No. 109 at 5.

However, even if there were no contradiction, it is not clear how this makes the *waiver of his rights to file a §2255 motion* in his plea agreement not knowing or voluntary. "An unconditional guilty plea waives all non-jurisdictional defenses and cures all antecedent constitutional defects, allowing *only* an attack on the voluntary and intelligent character of the plea." *United States v. Brizan*, 709 F.3d 864, 866-67 (9th Cir. 2013) (emphasis added). To the extent that Upshaw is attempting to claim that the advice he received on the motion to suppress and the potential sentence induced him into entering the plea agreement and the correspondent waiver involuntary and unknowing, an argument that he does not clearly put forward, the Court addresses the merits of his ineffective assistance of counsel claims below. *See, e.g.*, *Washington*, 422 F.3d at 871 ("a plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is unenforceable with respect to an [ineffective assistance of counsel] claim that challenges *the voluntariness of the waiver*") (emphasis added).

### 3.   <u>Failure to File Motion to Suppress and Request a *Franks* Hearing</u>

Upshaw claims that his attorney was ineffective in failing to litigate a meritorious Fourth Amendment claim by not moving to suppress illegally seized evidence obtained without a warrant. ECF No. 103 at 25, 33-39. Upshaw claims that he was told that his chances of succeeding on a motion to suppress were low and that he would be more likely to win on appeal but that an appeal would take a number of years. *Id.* Upshaw contends that had his attorney filed a motion to suppress he would not have pled guilty but instead would have gone to trial. *Id.* at 39. In response, the government contends that the evidence, including counsel's declaration, reveals that the filing of a motion to suppress was contemplated but that Upshaw himself told his counsel not to file the motion so he could seek a drug treatment program. ECF No. 113 at 21.

The bulk of Upshaw's motion submits arguments concerning the merits of his Fourth Amendment claim and argues that his constitutional rights have been violated as a result of the search that occurred in 2013 without a warrant. ECF No. 103 at 33-39. He has forfeited such claims by admitting the allegations pursuant to his guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267(1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent

claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Additionally, such claims were waived pursuant to his plea agreement. *McMurtrey v. Ryan*, 539 F.3d 1112, 1119 (9th Cir. 2008) (declining to consider an alleged pre-plea constitutional violation in a habeas appeal); *Fairbank v. Ayers*, 650 F.3d 1243, 1254-55 (9th Cir. 2011) (petitioner's claim at the guilt phase "must be limited to the contention that trial counsel was ineffective only in advising petitioner to plead guilty"). "[W]hile claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief" because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett*, 411 U.S. at 267. Petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Id.* To determine voluntariness, the Court examines the totality of the circumstances. *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986). A plea is voluntary if it "represents a voluntary and intelligent choice among alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

Although Petitioner seems to weakly attempt to argue that his counsel's failure to file a motion to suppress had a direct bearing on his decision to plead guilty, this is at best unsupported by the record and at worst contradicted.[3] The Court nonetheless addresses the merits of Petitioner's claim that his counsel ineffectively advised him about the merits of filing a motion to suppress resulting in an uninformed choice to plead guilty. "[T]he failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To prevail on a claim for ineffective assistance of counsel for failure to file a motion to suppress requires that the *Strickland* test be met and additionally that defendant prove that the Fourth Amendment claim is meritorious. *Id.* at 375. Petitioner

---

[3] Upshaw's contention in his submitted affidavit that he requested Days file a motion to suppress and Days outright refused, ECF No. 103 at 28, is not credible. Days' declaration states that this never occurred. ECF No. 114 at ¶48. Additionally, Mr. Days stated on the record in court that Upshaw had a motion to suppress to file but because he wanted to accept responsibility, he decided to forego doing so. ECF No. 110 at 3-4. Upshaw never contested this statement and he additionally expressed on the record in court his strong desire to accept responsibility and take the chance of attending a drug treatment program. ECF No. 110 at 13-15.

accordingly must show that "that counsel's representation fell below an objective standard of reasonableness" and that but for the unprofessional errors there is a reasonable probability that the outcome would have been different "absent the excludable evidence in order to show actual prejudice." *Id.*

Even assuming that Upshaw's motion to suppress would have been meritorious, his claim for ineffective assistance of counsel still fails. According to Defendant's version of events, the reason Mr. Days discouraged him from filling a motion to suppress is because he anticipated that the government would be less likely to agree to a long-term drug treatment program at sentencing. ECF No. 117 at 2. ("[Days] attempted to discourage Defendant from pursuing this claim by stating that the government would be unlikely to agree to long term drug treatment if Defendant attempted to raise a Fourth Amendment claim."). Mr. Days' declaration details his communication with Upshaw about potentially filing a motion to suppress as a result of the warrantless search of his room that ended with his arrest while he was hiding in the room at the time. ECF No. 114 at ¶¶10-44. In April 2015, Mr. Days states that he told Upshaw he believed Upshaw's Fourth Amendment rights had been violated and that defense should interview Mr. Vital, who the police report stated gave the officers consent to enter Upshaw's room on the day of his arrest. *Id.* at ¶¶ 10-11.[4] In July 2015, Mr. Days obtained Mr. Vital's phone number from Upshaw and requested a court appointed investigator interview Mr. Vital regarding the events that occurred on the day of Upshaw's arrest when law enforcement arrived at the residence on September 20, 2013. *Id.* at ¶¶19-21, 23, 25. Mr. Days received the investigator's report on or about July 23, 2015 and he informed Upshaw in August 2015 the investigator's report corroborated Upshaw's version of events. *Id.* at ¶¶ 23, 25.

In the course of counsel's discussions with Upshaw, Mr. Days also told Upshaw that he believed that most Courts would find the officers' testimony more credible than Mr. Vital's and Defendant's and further advised that if Defendant wanted to file a motion to suppress he would

---

[4] Mr. Vital, a registered sex-offender, was the renter of the main residence where Upshaw rented a room. Mr. Vital did not have access to Upshaw's room but the police report stated that Mr. Vital had consented to the search of Upshaw's room. ECF No. 114 at ¶10.

do so. *Id.* at ¶¶ 12-13. Mr. Days explained that if the motion to suppress was denied Upshaw could appeal and go to trial or enter a conditional plea in the meantime. *Id.* Mr. Days advised that the appeal could take over two years. In addition, in the course of counsel's discussions with Upshaw, Upshaw expressed his desire to seek a drug treatment program and that he wanted to be the type of father he never had to his son. *Id.* at ¶ 15. In August 2015, Mr. Days told Upshaw that the government may be open to Defendant receiving a long-term inpatient drug program and further indicated that if Defendant filed a motion to suppress and lost, the government may oppose such a program, and that the Court would be highly unlikely to place him in such a program over the government's objection. *Id.* at ¶ 25. In August and December 2015, Upshaw informed Days that he wanted and needed a long-term inpatient program, that he wanted to accept responsibility, and that he did not want to file a motion to suppress. *Id.* at ¶ 25, 36. Mr. Days also informed Upshaw that if the Court gave Upshaw a drug treatment program and he failed, he would receive a harsh sentence, possibly up to the statutory maximum. *Id.* Days and Upshaw also met on January 13, 2016, shortly before Upshaw pled guilty on January 19, 2016, and again discussed whether Defendant wanted to file a motion to suppress; the potential for a drug treatment program; that if he succeeded at the drug treatment program he would likely not be sentenced to further custody time; and that if he did not succeed at the program then the Court would likely impose the maximum sentence. *Id.* at ¶ 43. Additionally, in Defendant's objection letter to the PSR, Mr. Days submitted the interview statement from Mr. Vital which supports Upshaw's position that there was no consent to the search by stating:

> the defense objects to the paragraph to the extent it states that Jerry Vital gave officer's consent to enter defendant's room. Attached is a statement from Mr. Vital that the defense requests be incorporated into the paragraph. Defendant is committed to changing his life and acceptance of responsibility is the first step. For this reason Defendant chose to forego filing a motion to suppress.

ECF No. 76-1 at 1.

Mr. Days' contentions are not inconsistent without Defendant's version of events but provide timing and further details about the discussions between Upshaw and Mr. Days. Upshaw only seems to dispute the contention that he told Mr. Days that he did not want to file a motion to

suppress and emphasizes that Mr. Days misrepresented the chances of success in suppressing the illegal search, by stating that the Court would likely deny the motion:

> Defendant expressed his desire to file a motion to suppress, but counsel told petitioner that he would be better off to obtain a favorable plea from the government, due to the fact that Judge O'Neill who would be preceding over his case would most likely deny any motion regardless of its merits to gain the conviction.

ECF No. 117 at 4, 9-10.[5]

This is not a case where defense counsel failed to investigate the merits of a motion to suppress or failed to conduct discovery and discuss the merits of filing such a motion with his client *Cf. Kimmelman*, 477 U.S. at 385 (finding ineffective assistance of counsel where failure to file a motion to suppress resulted from failure to conduct pretrial discovery rather than from a strategic decision). Based on the record before the Court, the decision not to file a motion to suppress was a strategic decision, made in consultation with Upshaw, in order to improve his chance of receiving a drug treatment program at sentencing, consistent with Upshaw's expressed desire. *See, e.g.*, *United States v. Madsen*, No. CR-06-42-E-BLW, 2009 WL 2245062, at *6 (D. Idaho July 23, 2009) ("whether or not to file a motion to suppress is a strategic choice of counsel rather than a decision made by a defendant"). In evaluating the first *Strickland* prong, *i.e.* whether counsel's performance "fell below an objective standard of reasonableness[,]" 466 U.S. at 687-88, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690 "[A] strategic decision is accorded a high level of deference by reviewing courts." *Fairbank*, 650 F.3d at 1252-53 (discussing strategic decision to not place mental state in play to avoid introduction of

---

[5] To the extent that Upshaw claims in his reply brief that he did not express a desire to obtain a drug treatment program, ECF No. 117 at 10-11, these contentions are contradicted by his on the record expressed desire for such a program. ECF No. 110 at 14-15. The Court asked the Defendant if he was sure he wanted to take the risk of going to the drug treatment program and Upshaw stated:

> Yes, your Honor. I want the change. . . . I want the change and I'm willing to do whatever it takes to make that change. And if it takes me going to Delancey Street to do that change, then I'm more than willing to do that. I'm not going to fail. No matter what program I go to, I'm not going to fail. Because I don't have another one in me. I don't have another use in me. Before I thought I did. I don't. I can't spend anymore time away from my son than I already have. I don't want to miss anymore of my family's life. Even though I have a dysfunctional family, I don't want to miss anymore of their lives. *Id.*

The Court gives credit to Upshaw's on the record contentions over the after-the-fact, self-serving contentions in his reply brief. *See, e.g.*, *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986) (there is a "strong presumption" of truthfulness afforded to "solemn declarations made in open court.").

aggravating evidence); *see also Kimmelman*, 477 U.S. at 381-82 (noting the *Strickland* standard is "highly demanding").

The reasoning for this high level of deference was explained by the Supreme Court in a case which also involved an ineffective assistance of counsel claim for failing to file a motion to suppress. *Premo v. Moore*, 562 U.S. 115 (2011). In *Moore*, counsel provided an assessment of plea bargain without first seeking suppression of a confession and counsel's stated reason for not filing the motion to suppress was that it was likely to fail and would have been futile in light of other evidence. *Id.* at 124-125. In finding that petitioner had not received ineffective assistance of counsel, the Supreme Court explained:

> Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve.
> …
> These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage.

*Id.*

Here, Mr. Days requested a court-appointed investigator and correspondingly interviewed Mr. Vital about the potential Fourth Amendment violations and found that such violation was likely but discussed the chances of success of the motion weighed against Upshaw's desire to receive a drug treatment program. Mr. Days' prediction that Upshaw had a chance of receiving a drug treatment program (at the risk of facing the statutory maximum if he failed the program) in lieu of sentencing was correct. Even in cases where an attorney's predictions are incorrect in these circumstances, courts do not find ineffective assistance of counsel because the bar is very high. *See, e.g.*, *Iaea*, 800 F.2d at 865 ("a mere inaccurate prediction, standing alone, would not constitute ineffective assistance" unless it is a "gross mischaracterization of the likely outcome presented in this case"). "If counsel conducts [a] substantial investigation[], the strategic choices made as a result 'will seldom if ever' be found wanting" under the deficient performance prong. *Strickland*, 466 U.S. at 681 (citation and internal quotation marks omitted). Here, Mr. Days did conduct an investigation on the merits of the motion to suppress and advised Upshaw of his

14

assessment of the chances of success of the motion and the potential for appealing a denial such a motion. Upshaw made the decision to plead guilty with this advice in hand. Even if the motion's chances of success were better than Mr. Days predicted, this is not a basis to find ineffective assistance of counsel. *See, e.g.*, *United States v. Mills*, No. 3:11-CR-00103-LRH, 2014 WL 1390950, at *3 (D. Nev. Apr. 9, 2014) (finding no deficient performance where "the decision [to forego filing a motion to suppress] advanced the overarching and successful defense strategy of seeking a reduction for acceptance of responsibility and a downward variance from the 97-month minimum guideline sentence"). The decision here not to file the motion to suppress was part of a strategy to allow Upshaw an opportunity to attend a drug treatment program and attain additional benefits from the plea agreement, a strategy which Upshaw undoubtedly understood based on the plea agreement and Mr. Days' representations and arguments made before the Court in Upshaw's presence. "Because the record evidences the strategic nature of the decision, and therefore precludes habeas relief," the Court need not hold an evidentiary hearing. *See Fairbank*, 650 F.3d at 1255. The strategic decision not to make a motion to suppress, even assuming it would have been meritorious, will not be second guessed by this Court. *See Moore*, 562 U.S. at 132 ("Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial. . . ."). Upshaw has not demonstrated that Mr. Days' performance fell below the objective standard of reasonableness.

Petitioner also fails to meet the second, "prejudice" prong of *Strickland*. To prevail on the prejudice prong under *Strickland* in the context of a guilty plea, Upshaw must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence." *Moore*, 562 U.S. at 129. In *Moore*, the Supreme Court also held that the petitioner had failed to show prejudice, finding that the "bargain counsel struck was. . .a favorable one" where on the advice of counsel defendant received 300 months, the minimum sentence allowed by law for the offense, and "avoid[ed] a possible sentence of life without parole or death." *Id.* at 119 & 129.

Here, as the government points out, Upshaw received a substantial benefit to pleading guilty pursuant to his plea agreement – the plea agreement provided that the government would: recommend a three-level reduction in Upshaw's offense level if he accepted responsibility, agree to seek concurrent terms of imprisonment on the two counts, agree to dismiss three of the five counts in the indictment, and allow Upshaw to retain the right to argue for a downward variance. *See* ECF No. 71 ¶3(g), 4(a), (c), (d); ECF No. 113 at 23. Upshaw received these benefits in addition to the fact that the government did not oppose the request for a drug treatment program. At the scheduled sentencing conference Upshaw told the Court on the record he was aware of the risk of entering the drug treatment program: "I even mentioned to Mr. Days that if I got either the Teen Challenge or the Jericho, which I was already accepted to, that if I did blow it, that I would take the full maximum. Not the ten years, I would do the 25." ECF No. 110 at 15. It appears that Upshaw's objective, as can be inferred by the statements in his § 2255 motion, his statements on the record in court, and his attorney's declaration, was to receive a drug treatment program. ECF No. 103 at 7, 28, 42, 46; ECF No. 110 at 14-15; ECF No. 117 at ¶¶ 15, 25, 36. Upshaw received the benefit of his attorney's prediction that he would be more likely to receive a drug treatment program if he pled guilty – he received a two-year drug treatment program rather than the 78 months recommended in the PSR. *See* ECF No. 76 at 4; ECF No. 110 at 11-15. Unfortunately, Upshaw then failed the drug program which the Court had specifically warned would result in the imposition of the maximum sentence – a risk that Upshaw knowingly undertook as demonstrated by the on the record discussion. ECF No. 110 at 11-15.[6] Thus, even if Counsel's advice that the motion to suppress was unlikely to succeed somehow amounted to deficient performance under the first *Strickland* prong, Upshaw failed to show that he would not have pleaded guilty and insisted on going to trial even if a suppression motion was filed and successful. Upshaw fails to meet the second prong under *Strickland*. "The substantial burden to

---

[6] In his reply brief, Petitioner cites to *Glover v. United States,* 531 U.S. 198, 203 (2001) for the proposition that "if an increased prison term did flow from an error the petitioner has established *Strickland* prejudice." ECF No. 117 at 12. Here, the increased prison term flowed from Petitioner's error – not his counsel's. Therefore, Petitioner cannot show prejudice from either the failure to file the motion to suppress or the advice that his best chance of receiving a drug treatment program was pleading guilty without filing a motion to suppress.

show ineffective assistance of counsel, the burden the claimant must meet to avoid the plea, has not been met in this case." *Moore*, 562 U.S. at 132.

Additionally, as his eighth ground in his § 2255 motion, Upshaw contends that his counsel was ineffective for his "his failure to request a *Franks* hearing and challenge the search, affidavits and warrants to Petitioner's case." ECF No. 103 at 47. In *Franks v. Delaware*, the Supreme Court recognized a defendant's right to challenge the sufficiency of a previously issued and executed warrant by attacking statements made in an affidavit in support of the warrant. 438 U.S. 154, 155-156 (1978); *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004) ("A *Franks* hearing is appropriate only if [defendant] can make a substantial preliminary showing [1] that a false statement was deliberately or recklessly included in or omitted from a warrant affidavit, and [2] that the false statements or omissions were material to the finding of probable cause"). As Petitioner himself points out, a *Franks* hearing is held "where the trustworthiness of an affidavit to obtain a warrant is called into question." *Id.* (citing *Franks*, 438 U.S. at 171). In this case, the *warrantless* search of Upshaw's room is the basis for Upshaw's first ground for relief claiming his attorney was ineffective for not filing a motion to suppress as discussed above. The Court is unaware of any warrant that was obtained or correspondingly any affidavit which supported a search warrant in this case.[7] Accordingly, a *Franks* hearing appears to have no applicability to this case. As a result, Upshaw's eighth ground for claiming ineffective assistance of counsel is non-sensical and without merit.

Thus, the Court DENIES Petitioner's § 2255 motion with regard to his claim that he received ineffective assistance of counsel because his counsel failed to file a motion to suppress or request a *Franks* hearing (grounds one and eight).

---

[7] In his reply brief, Upshaw mentions that the failure to request a *Franks* hearing "related to the affidavit and warrant that were later obtained to search Defendant's computer that was illegally seized from his rented room." ECF No. 117 at 13. This affidavit and search warrant were not mentioned in his § 2255 motion, and regardless the reply brief does not indicate what the false statements were or provide any other details to show that a *Franks* hearing would have been appropriate. The Court does not consider these dilatory and unsupported reply brief assertions. *See, e.g.*, *James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994) (noting that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief").

### 4. <u>Failure to Provide Upshaw with Certain Evidence</u>

Upshaw claims that failure to disclose interview and police reports that related to the merits of Upshaw's Fourth Amendment claims until after Upshaw entered his guilty plea was ineffective assistance of counsel (grounds two and six). ECF No. 103 at 5, 40-41, 45. Upshaw claims that the interview report of Vital which occurred in July 2015 was not provided to him until after he signed the plea agreement. ECF No. 103 at 26. In making this claim, Upshaw contends that his decision to enter the plea agreement and plead guilty were not knowingly and voluntary because the Vital report supported his contention that his Fourth Amendment rights were violated. ECF No. 103 at 40-41, 45. The record shows that Mr. Days submitted a request to the Court in July 2015 to have an investigator interview Vital. ECF No. 114 at ¶¶ 20-25. Mr. Days' declaration submits that he went over the police report with Upshaw. *Id.* at ¶ 25. He also states that he told Upshaw in August 2015 that the defense had interviewed Mr. Vital and that Mr. Vital corroborated Upshaw's version of events. *Id.* In addition, Mr. Days stated that Upshaw received the investigator report of Vital's interview prior to signing the plea agreement. *Id.* at ¶ 53. In his reply, Upshaw does not contest that Mr. Days notified him of Vital's interview and that it corroborated his Fourth Amendment claim before he pled guilty but instead appears to take issue with the advice Mr. Days gave him about the chances of getting a long-term drug treatment program were lower if he brought the Fourth Amendment challenge. ECF No. 117 at 2-3, 10. Essentially Upshaw takes issue with Mr. Days dissuading him from pursuing the Fourth Amendment claim and claims this amounted to ineffective assistance of counsel. *Id.* at 5 ("If counsel had not misinformed Defendant of the likelihood of success based upon what counsel himself characterized as a valid Fourth Amendment claim, nor made conclusory predictions of the sentence Defendant would receive if he did plead guilty, it is clear Defendant would have refused to plea and instead demanded to proceed to trial"). Upshaw is incorrect – his counsel's advice on the likelihood of success did not amount to ineffective assistance of counsel as discussed above.

Petitioner contends that after he received the Vital report in January after pleading guilty, he asked his counsel to withdraw his plea and he refused. ECF No. 103 at 26-27, 45. This

contention is rebutted by Upshaw's statements on the record at the sentencing where he not only does not mention a desire to withdraw his plea but he wholeheartedly requested the opportunity to attend a drug treatment program in lieu of sentencing. *See Chizen*, 809 F.2d at 562 ("strong presumption" of truthfulness afforded to "solemn declarations made in open court.").

Upshaw's arguments concerning grounds two and six in his § 2255 motion are no different than those submitted by him to support his claim that he received ineffective assistance of counsel for the advice he received concerning filing a motion to suppress. The Court addressed those arguments at length in the prior section and found them to be without merit. For those same the Court DENIES Upshaw's § 2255 motion with regard to his claim that he received ineffective assistance of counsel because his counsel failed disclose interview and police reports until after he pled guilty (grounds two and six).

### 5.    Failure to Advise on Potential Sentencing Consequences

Pursuant to grounds three, four, five and seven in Upshaw's §2255 motion, he claims that his attorney did not correctly advise him of the consequences of his entering a guilty plea. ECF No. 103 at 7-9, 42-44.  These arguments include Petitioner's claim that his counsel did not explain how the United States Sentencing Guidelines applied to his case (ground five), did not inform him about his sentencing exposure or that the maximum he could receive by accepting the guilty plea was a ten-year sentence (grounds four and seven), and deceitfully advised him that if he pled guilty he would get a one-year drug program (ground three). ECF No. 103 at 28. Petitioner further contends that had he known his guilty plea would yield a ten-year sentence he would not have pleaded guilty and instead would have gone to trial. ECF No. 103 at 29.

Upshaw's assertions that he did not understand the sentencing guidelines or the potential sentence he faced, and that he was incorrectly or deceitfully advised of his sentencing exposure are directly contradicted by the record. First, his plea agreement advised him of the potential maximum sentence - twenty-five years for count four and ten years for count five. ECF No. 71 at ¶ 6. It further advised him that the Court was not a party to the agreement and that it is free to impose the maximum penalties provided therein. *Id.* at 15-16. Additionally, at the change of plea, Upshaw stated he reviewed the entire plea agreement and further attested that he knew that

the maximum penalty for count four was twenty-five years and the maximum for count five was ten-years. ECF No. 109 at 2-3. He was also advised that the Court must consult the sentencing guidelines but that it was not obligated to follow them. *Id.* at 5. Upshaw's after the fact assertions contradict his on the record statements about understanding his sentencing exposure and thus his assertions in his § 2255 motion lack credibility. *See, e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (Defendant's on-the-record statements are given substantial weight and "carry a strong presumption of verity."); *United States v. Kaczynski*, 239 F.3d 1108, 1115 (9th Cir. 2001) (court's give "substantial weight" to Defendant's s in-court statements during plea colloquy); *Lee*, 137 S. Ct. at 1967 (noting "the strong societal interest in finality has special force with respect to convictions based on guilty pleas. Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies") (internal citation and quotations omitted).

Upshaw's contention that his attorney told him that would receive a drug-treatment program is what in fact occurred. Upshaw received a two-year drug treatment program in lieu of being sentenced and he failed the program within five months and was sentenced thereafter. ECF Nos. 110, 112. Before Upshaw decided to take the opportunity to participate in the drug treatment program, the Court specifically told Upshaw he would receive the ten-year maximum if he failed the drug treatment program. ECF No. 110 at 11-15. Upshaw, after in-depth discussions with his attorney, made the knowing choice to enter a drug treatment program despite the risk of a higher sentence if he failed. *Id.* at 15. Upshaw stated in-court, on the record, that he was not only aware of the ten-year maximum but that he was willing to take the twenty-five year maximum applicable to count four if he failed the drug program. *Id.* Accordingly, Upshaw's assertions in his § 2255 motion that his attorney did not advise about his sentencing exposure are not credible and correspondingly do not render his plea involuntary. *See Kaczynski*, 239 F.3d 1108, 1115 (finding "no reason not fully to credit [Petitioner's] sworn statements in the plea agreement, as well as during the plea colloquy, that he was pleading voluntarily"). "[C]ontentions that in the face of the record are wholly incredible" are "subject to summary dismissal." *Blackledge,* 431 U.S. at 74.

The Court DENIES Upshaw's § 2255 motion with regard to his claim that he received ineffective assistance of counsel because his attorney misadvised him on the sentencing consequences of his plea – grounds three, four, five and seven – thus rendering his plea involuntary or unintelligent.

### 6. <u>Petitioner's Request For An Evidentiary Hearing Is Denied</u>

In light of the substantial record on the issues raised by Upshaw, the Court finds Petitioner's claims that he was coerced into signing the plea agreement and that his guilty plea was not knowing or involuntary to be without merit. *See Doe v. Woodford*, 508 F.3d 563, 572 (9th Cir. 2007) ("We have no doubt that the decision to plead guilty is a difficult one for many Petitioners, but the fact that one struggles with the decision, and might later even come to regret it, does not render it coerced."). After careful consideration of the record and the additional documents submitted by the parties, this Court finds that there is no evidence that supports Petitioner's claim that he was not capable of making a reasoned choice among the alternatives presented to him by his attorney -beyond his own self-serving statements. The only evidence supporting Petitioner's claims is Petitioner's own after the fact statements that contradict his in-court statements. Such palpably false assertions do not warrant a hearing or relief under § 2255. *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994) (no hearing required when the issue of the prisoner's credibility can be "conclusively decided on the basis of documentary testimony and evidence in the record").

The record in this case "conclusively show[s] that the prisoner is entitled to no relief[,]" 28 U.S.C.A. § 2255(b), and the Court finds that no hearing is required on the matter. *See Shah*, 878 F.2d at 1159. Accordingly, Petitioner's request for an evidentiary hearing is DENIED. *McMullen*, 98 F.3d at 1159.

### B. <u>Motion To Dismiss Indictment And Request for Copy of Indictment</u>

As a preliminary matter Upshaw's motion to dismiss the indictment, ECF No. 119, makes it clear that he had a copy of the indictment available and as a result his "motion" requesting the indictment, wherein he claims that he has never seen or received the indictment and requests the Court supply him with a copy, is DENIED as moot. ECF No. 118.

On July 30, 2018, ten months after filing his § 2255 motion, Petitioner filed what he styled a "motion to dismiss the indictment pursuant to Fed. R. Civ. P 12(b)(h)(3) for lack of subject matter and violation of constitutional rights." ECF No. 119. In this motion, Petitioner attacks count four (18 U.S.C. § 474) and count five (18 U.S.C § 1029(a)(3)) of his indictment, making a confusing argument that the indictment is "fatally flawed" as ambiguous and does not provide all essential facts constituting the offenses charged. *Id.* at 1-2. With respect to 18 U.S.C § 474, he states that changing the word "or" to "and" in the indictment[8] raised the bar impossibly high for *the government* and caused Upshaw to believe he must only show that he did not do any single element to win his case, somehow making it impossible to prepare a defense. *Id.* at 4. With respect to 18 U.S.C. § 1029(a)(3), Upshaw states that the indictment says he had approximately 10 counterfeit access devices and therefore fails to state a violation of the statute which requires "15 or more counterfeit and unauthorized access devices." *Id.* at 5-7; ECF No. 1 at 3.[9] He argues that because the indictment "fails to state an offense[,] " this is a jurisdictional challenge that cannot be waived in a plea agreement. ECF No. 119 at 8.

Petitioner asserts that the Court lacked jurisdiction to entertain the criminal prosecution against him because of the flaws in the indictment. Section 2255 provides that claims that a sentence was illegally imposed based on claim "that the court was without jurisdiction to impose such sentence" are to be brought as § 2255 claims. 28 U.S.C. § 2255(a). "Federal Rules of Civil Procedure are not a source of post-conviction relief." *United States v. Lizarraras-Chacon*, No. 3:11-CR-00517-HZ-1, 2015 WL 3447908, at *1 (D. Or. May 29, 2015); *see also United States v.*

---

[8] The indictment states that Upshaw "with intent to defraud, made, acquired, scanned, captured, recorded, received, transmitted, reproduced, and had in his control, custody, and possession a digital or electronic image of obligations and securities of the United States, to wit, images of Federal Reserve Notes, all in violation of Title 18, United States Code, Section 474." ECF No. 1 at 3 (emphasis added). Upshaw points to the fact that the statute states "or" in place of the "and" underlined in the preceding quote from the indictment. *See* 18 U.S.C. § 474.

[9] With respect to the argument concerning count five under 18 U.S.C. § 1029(a)(3), the Court notes that Upshaw selectively ignores the part of the indictment that specifically states that the grand jury charges that Upshaw "knowingly and with intent to defraud, possessed *15 or more counterfeit and unauthorized access devices*, including *approximately 628 unauthorized profiles of individuals, including the names, social security numbers, and other personal identifying information, such as credit and bank account numbers, and approximately 10 counterfeit access devices*, said possession affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1029(a)(3). ECF No. 1 at 3 (emphasis added). Therefore, even if the motion to dismiss the indictment were procedurally appropriate, this argument has no merit.

*Richmond*, No. CIV. 06-70000-KI, 2007 WL 2729474, at *1 (D. Or. Sept. 14, 2007) (holding that "the basis for the motion is inappropriate" where a criminal conviction was challenged pursuant to the Federal Rules of Civil Procedure). Though Upshaw has captioned the present challenge as a motion brought pursuant to the Federal Rules of Civil Procedure, federal courts are empowered to "ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category," including cases to recharacterize a claim based on "its underlying legal basis." *Castro v. United States*, 540 U.S. 375, 381-82 (2003). "As a general rule, § 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of detention." *Harrison v. Ollison*, 519 F.3d 952, 955 (9th Cir. 2008) (internal quotation marks and citation omitted). Regardless of the label a petitioner places on a motion, "[a]n application filed in the sentencing court that substantively falls within the scope of Section 2255 is analyzed as a motion under that Section." *Lizarraras-Chacon*, 2015 WL 3447908, at *1. Upshaw's assertion that the Court lacked jurisdiction because of the indictment's flaws is the "type of challenge [] specifically stated in Section 2255 as a claim properly addressed through a habeas proceeding." *Id.* The Court here construes the motion to dismiss the indictment as falling within the scope of § 2255 motion as it challenges the Court's jurisdiction. *See, e.g.*, *United States v. Preciado-Quinonez*, 53 F. App'x 6, 7 (10th Cir. 2002) ("after [final judgment] a pleading challenging the adequacy of an indictment is properly deemed a § 2255 motion").

The Ninth Circuit, following the reasoning of the Second Circuit, has held that when a § 2255 motion is filed before the adjudication of an initial § 2255 is complete, the district court should construe the second § 2255 motion, especially in the context of a *pro se* litigant, as a motion to amend the pending § 2255 motion rather than as a successive motion - the court can then use its discretion to decide whether the motion to amend should be granted. *Woods v. Carey*, 525 F.3d 886, 889-90 (9th Cir. 2008).

Petitioner's motion to dismiss the indictment, construed as a motion to amend his § 2255 motion, is without merit as it raises no viable legal arguments concerning an insufficiency in the indictment. Even without considering the merits, the motion is procedurally barred as it is subject

23

to a one-year period of limitations and was filed over a year and a half after final judgment in this matter. *See* 28 U.S.C. § 2255(f).

### C.    <u>Motion for Release Pending Appeal</u>

While his § 2255 motion was pending, on January 2, 2019, Petitioner filed a "motion for release pending appeal pursuant to Fed. R. Crim. P. 46(c) and 18 U.S.C. § 3143(b)." ECF No. 120. This motion largely repeats arguments concerning the merits of his ineffective assistance of counsel claims, but also submits that (1) he is not a flight risk, (2) he had previously been granted pretrial release as the Court found he did not pose a danger the community, (3) that Petitioner's "appeal" (presumably referring to his § 2255 motion) is not for the purpose of delay and raises substantial questions of law and fact. *Id.* at 3-4.

Federal Rule of Criminal Procedure 46(c) provides that the provisions of 18 U.S.C. § 3143 govern release pending sentencing or an appeal and that "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." 18 U.S.C § 3143(b) provides that the court shall order defendant detained pending appeal unless it finds, *inter alia*, (A) that by clear and convincing evidence he is not likely to flee or pose a danger to the safety of any other person or the community *and* (B) that the appeal raises a substantial question likely to result in (i) reversal, (ii) an order for new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence less than the time already served plus the expected duration of the appeal process.

The Bail Reform Act of 1984, including 18 U.S.C. § 3143(b), "does not apply to federal prisoners seeking postconviction relief. Instead, Fed. R. App. P. 23 governs the issue of the release or detention of a prisoner, state or federal, who is collaterally attacking his or her criminal conviction" *United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994), *as amended* (Feb. 8, 1995) (citations omitted). "In the habeas context, this court has reserved bail for 'extraordinary cases involving special circumstances or a high probability of success.'" *Id.* (quoting *Land v. Deeds*, 878 F.2d 318, 318 (9th Cir. 1989)). "Special circumstances include 'a serious deterioration of health while incarcerated, and unusual delay in the appeal process." *Mett*, 41 F.3d at 1282, n. 4 (quoting *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir.1989)). Upshaw has not shown any

special circumstances that are applicable here. Additionally, given this Court's denial of his § 2255 motion on the merits, he cannot show a "high probability of success" applicable to the habeas context or even the lesser standard that the appeal "raises a substantial question of law or fact likely to result in . . . reversal [or] . . . a reduced sentence . . ." under 18 U.S.C § 3143(b)(1)(B). Besides being procedurally inappropriate and substantively unsupported, Upshaw's motion for release pending "appeal" is moot given the denial of his § 2255 motion.

Accordingly, Upshaw's motion for release pending "appeal" under 18 U.S.C. § 3143(b), ECF No. 120, is DENIED.[10]

## D. <u>Certificate of Appealability</u>

A petitioner cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the Court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, a petitioner must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the Court has denied a § 2255 motion or claims within the motion on the merits, a petitioner must show that reasonable jurists would find the Court's decision on the merits to be debatable or wrong. *Id*. The Court finds that Petitioner has not made any showing, let alone a substantial one, of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Court further finds that reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. *Slack*, 529 U.S. at 483. Accordingly, the Court DECLINES to issue a certificate of appealability.

//

//

---

[10] On February 25, 2019, while his motion for release pending appeal was pending for less than two months, Upshaw filed a motion for a status update or scheduling order on his motion for release pending appeal. ECF No. 121. That motion is denied as moot since all his pending motions have been resolved by this Order.

## IV. <u>CONCLUSION AND ORDER</u>

Accordingly, **IT IS HEREBY ORDERED:**

1) Petitioner's § 2255 motion (ECF No. 103) is **DENIED**;

2) Petitioner's motion requesting a copy of the indictment (ECF No. 118) is **DENIED**;

3) Petitioner's motion to dismiss the indictment (ECF No. 119) is **DENIED**;

4) Petitioner's motion for release pending appeal (ECF No. 120) is **DENIED**; and

5) Petitioner's motion for a status or scheduling order on his motion for release pending appeal (ECF No. 121) is **DENIED** as moot.

IT IS SO ORDERED.

Dated: __**March 13, 2019**__         _____**/s/ Lawrence J. O'Neill**_____
                                      UNITED STATES CHIEF DISTRICT JUDGE