UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD UPSHAW,<br><br>Defendant. | No. 1:14-cr-00256-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION AND AMENDED MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. Nos. 131, 133) |

Pending before the court is defendant Richard Upshaw's motion and amended motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motions are largely based on defendant's medical condition and the alleged risks posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. Nos. 131, 133.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On January 19, 2016, defendant pleaded guilty to possession of images for counterfeiting U.S. Obligations in violation of 18 U.S.C. § 474 as charged in Count Four of the Indictment and possession of fifteen or more unauthorized and counterfeit access devices in violation of 18 U.S.C. § 1029(a)(3) as charged in Count Five. (Doc. Nos. 71 at 3–4; 74.) According to the Presentence Report prepared in defendant's case, he created and used counterfeit $100 bills at

1

businesses in and around Fresno, California, which led to a criminal investigation and his ultimate arrest. (Doc. No. 76 (Presentence Report) at 5–7.) Following his entry of his guilty pleas, it was determined that under the U.S. Sentencing Guidelines, defendant Upshaw's adjusted offense level was 19 and his criminal history category was VI, resulting in an advisory guideline range calling for a sentence between 63 and 78 months imprisonment on each of the two counts to which he had pled guilty. (*Id.* at 27.) The U.S. Probation Office recommended a sentence of 78 months imprisonment, the high end of the advisory guideline range, on each of the two counts with those sentences to run concurrently. (*Id.*) Sentencing was scheduled for May 2016, but it was delayed so defendant could participate in the Delancey Street Program, a rigorous rehabilitative program. (Doc. Nos. 81, 83, 85, 86.) However, in September 2016, a petition alleging violation of the conditions of defendant's pretrial release condition was filed after he left the Delancey Street Program without permission to do so. (Doc. No. 89.) Defendant admitted to the violation. (Doc. No. 93.) Thereafter, on October 3, 2016, defendant was sentenced to a term of imprisonment of 120 months with a 36-month term of supervised release to follow. (Doc. Nos. 94; 95 at 2–3.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Sheridan Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"). (Doc. No. 131 at 1.) On June 10, 2020, defendant, appearing pro se, filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 131.) On June 11, 2020, defendant's motion was referred by the court to the Office of the Federal Defender pursuant to Eastern District of California General Order 595. (Doc. No. 132.) On June 26, 2020, appointed counsel on behalf of defendant filed an amended motion for his compassionate release. (Doc. No. 133.) On July 21, 2020, the government filed its opposition to the motion, and on July 31, 2020, defendant filed his reply thereto under seal. (Doc. Nos. 134, 140 (sealed).)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances

include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial

3

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions).  However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F.

---

intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered emergency period."  *Id.*  The BOP's authority expires "30 days after the date on which the national emergency declaration terminates."  *Id.* § 12003(a)(2).  After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations."  Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

1    Supp. 3d 674, 681 (N.D. Cal. 2019).

2    In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the
3    defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*
4    *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit
5    has not specifically addressed the question of which party bears the burden in the context of a
6    motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts
7    that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United*
8    *States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020);
9    *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7,
10   2020).

## ANALYSIS

12   As district courts have summarized, in analyzing whether a defendant is entitled to
13   compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a
14   defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.  *Id.*  Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable."  *Id.*

20   *Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-
21   LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4;
22   *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,
23   2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be
24   "consistent with" the sentencing factors set forth in §3553(a)).

25   **A.    Administrative Exhaustion**

26   On May 7, 2020, defendant submitted an administrative request seeking his
27   compassionate release (and also release pursuant to the CARES Act) from the Warden at FCI
28   Sheridan.  (Doc. No. 134-1 at 14–16.)  On May 14, 2020, the Warden denied defendant's request

5

based on the CARES Act. (*Id.*) Because his request was denied within 30 days, defendant should be required to appeal his denial to the BOP's Regional Director pursuant to 28 C.F.R. § 542.15(a) in order to exhaust his administrative remedies. *See supra* note 1. Nonetheless, the government has conceded that the administrative exhaustion requirement has been satisfied here. (Doc. No. 134 at 4.) Accordingly, the court will address the merits of the pending motion.

**B.      Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Upshaw argues that extraordinary and compelling reasons warranting his compassionate release exist due to his medical conditions. In order to qualify for compassionate release, defendant must demonstrate that he is suffering from some serious medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI Sheridan and the medical condition is one "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant argues he is a "47 year-old male who suffers from chronic bronchitis and is genetically predisposed to Idiopathic Pulmonary Fibrosis" because some of his family members suffer from that condition. (Doc. No. 133 at 16.) To be clear, however, defendant does not argue that he actually suffers from pulmonary fibrosis. Further, the BOP medical records submitted by

---

[4] However, because defendant Upshaw is only 48 years old (Doc. No. 309 at 3), his age and age-related factors do not play a role in consideration of his pending motion.

7

defendant do not corroborate his claim that he suffers from "chronic bronchitis." (*Id.*) Instead, those medical records confirm that defendant has some "[s]hortness of breath," but he is "able to speak in full and lengthy sentences without needing to pause for breath" and he is "able to ambulate without needing to stop and rest." (Doc. No. 133-5 at 2.) However—although not discussed in his motion—defendant's BOP medical records indicate that he may suffer from hypertension. (*Id.* at 1.) *See High Blood Pressure: High Blood Pressure Symptoms and Causes*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/bloodpressure/about.htm (last visited Sept. 29, 2020) (requiring a systolic reading of 130mm Hg or higher and diastolic reading of 80 mm Hg or higher). At the time of his sentencing, it was noted that defendant Upshaw had "no health problems" at that time, "but he used to have perforated ulcers when he was younger and he tore his esophagus." as a result of alcohol and drug use. (Doc. No. 76 (Presentence Report) at 20.)

According to the CDC, defendant "might be at an increased risk for severe illness from COVID-19" due to his possible hypertension. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 29, 2020) (stating those who suffer from pulmonary hypertension are in fact at risk, as opposed to hypertension generally which "may" place an individual at risk). No other condition from which defendant Upshaw suffers places him at higher risk of becoming severely ill should he contract COVID-19. While the court understands defendant's concerns regarding his genetic predisposition to pulmonary fibrosis, there is no evidence before the court that he currently suffers from that medical condition. (*See* Doc. No. 134 (Government's Opposition) at 4 ("BOP medical records do not indicate that Upshaw has any of his claimed health conditions.").)

Defendant's possible hypertension—which he does not even address in his pending motions and which has not been diagnosed by BOP—is insufficient to establish "extraordinary and compelling reasons" justifying his compassionate release. First and foremost, hypertension alongside the risk of contracting COVID-19, without more, is not a "serious" medical condition

8

that would qualify a prisoner for compassionate release. *See, e.g.*, *United States v. Roper*, CR 117-035, 2020 WL 4288417, at *1 (S.D. Ga July 27, 2020) (holding that hypertension is not "an illness as sufficiently serious to warrant compassionate release in and of itself"); *United States v. Ackerman*, No. 11-740-KSM-1, 2020 WL 5017618, *6 (E.D. Pa. Aug. 25, 2020) (same). Second, defendant has made no showing that his possible hypertension condition significantly hinders his ability to provide "self-care" at FCI Sheridan. (*See passim* Doc. Nos. 131, 133.) Nothing in the BOP medical records submitted by defendant, or by the government for that matter, indicates that defendant's possible hypertension presents him with any such difficulties. (*See passim* Doc. Nos. 133-5; 138 (sealed).) In short, defendant has not carried his burden to demonstrate that his medical conditions warrant his compassionate release. *See Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction.").

Therefore, in this case, the court does not find extraordinary and compelling reasons justifying compassionate release pursuant to §3582(c)(1)(A).

**C.     Consistency With the § 3553(a) Factors**

Because the pending motion and amended motion fail to establish extraordinary and compelling reasons justifying compassionate release, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

**CONCLUSION**

For the reasons explained above, defendant's motion and amended motion for compassionate release (Doc. Nos. 131, 133) are denied.

IT IS SO ORDERED.

Dated:   **October 5, 2020**                              /s/ Dale A. Drozd
                                                          UNITED STATES DISTRICT JUDGE